Commonwealth of Pennsylvania, Department of Transportation, Petitioner *v.* Paoli Construction Company, Respondent.

Argued February 2, 1978, before President Judge Bowman and Judges Blatt and DiSalle, sitting as a panel of three.

*Arthur H. Marateck,* Assistant Attorney General, with him, *Robert W. Cunliffe,* Deputy Attorney General, and *Robert P. Kane,* Attorney General, for petitioner.

*David B. Disney,* with him *McNees, Wallace & Nurick,* for respondent.

OPINION BY PRESIDENT JUDGE BOWMAN, May 19, 1978:

In July, 1970, petitioner, Department of Transportation (PennDOT), and respondent, Paoli Construction Company (Paoli), entered into a written contract for the construction or improvement of a certain section of state highway in Bucks County. The project involved construction of five and one-half miles of roadway over a new route in virgin territory and two miles of roadway within the right-of-way of the existing highway. During the course of construction, a dispute arose over Paoli's responsibility for maintenance and protection of through traffic along the two-mile segment of existing highway. As a result, after the project's completion, Paoli filed a complaint in assumpsit before the Board of Arbitration of Claims (Board) seeking compensation for what Paloi alleged

to be unanticipated additional costs incurred in performing work beyond that required by the contract. The Board, after hearing, agreed with Paoli and awarded judgment in its favor in the sum of $218,322-.07. PennDOT has filed a petition for review of the Board's order.

It is clear that an order of the Board must be affirmed by this Court unless we find that it is not in accordance with law or that there is not substantial evidence to support the findings of fact. *Department of Transportation v. Brayman Construction Co.*, 33 Pa. Commonwealth Ct. 485, 382 A.2d 767 (1978). PennDOT argues that the Board's order should be reversed because it is not in accordance with basic contract law. PennDOT's argument is that the contract was patently ambiguous with regard to Paoli's traffic maintenance responsibilities; that Paoli was aware of this alleged patent ambiguity at the time it submitted its bid; that Paoli, therefore, had "an affirmative obligation" to "seek clarification" of the contractual provisions from PennDOT; and that, in failing to seek such clarification, Paoli bid "at its own risk" and is "estopped from claiming reimbursement for additional costs."

The Board concluded that the contractual provisions relating to traffic maintenance and protection were "ambiguous and incomplete" and, invoking the principle that an ambiguous contractual provision must be construed against the drafter, in this case PennDOT, determined that Paoli was not required by the contract to maintain a temporary roadway during construction of the new two-mile segment. Thus, PennDOT's insistence that Paoli do so, reasoned the Board, constituted a demand for additional work, not within the contract, for which Paoli should be reimbursed.

Although we do not necessarily agree with the Board's conclusion that the contract was ambiguous, we do agree that the contract was "incomplete" in that, as written, it simply failed to require Paoli to perform the temporary roadway work PennDOT demanded. This being the case, we view the contract as having a patent "omission" rather than a patent "ambiguity." Since we believe the findings of fact in the present record support the conclusion that the contract was "incomplete," *i.e.*, that the contract omitted provisions requiring Paoli to maintain through traffic along the entirety of the two-mile segment, we shall affirm the Board's order awarding judgment in favor of Paoli for additional work.

Few principles of law are more firmly established than the principle conferring upon parties the right freely to contract. "Parties have the right to make their own contract, and it is not the function of the courts to rewrite it or give it a construction in conflict with the plain meaning of the language utilized." *Department of Transportation v. Brayman Construction Co., supra* at 490, 382 A.2d at 769; *see also Department of Transportation v. Acchioni and Canuso, Inc.,* 14 Pa. Commonwealth Ct. 596, 599, 324 A.2d 828, 830 (1974). "Courts must interpret contracts as written, and in construing a contract each and every part of it must be taken into consideration and be given effect. . . . " *Id.* The question thus presents itself: What, if anything, is contained in this contract relative to Paoli's duty to maintain and protect through traffic along the disputed two-mile segment?

The contract between PennDOT and Paoli is not a particularly simple agreement. Incorporated in and made part of the contract is a 965 page document designated "Form 408 Specifications," dated 1970, promulgated by the then Department of Highways.

Section 100 of Form 408 provides that all contracts between PennDOT and the contractor "which pertain to any project of highway improvement or construction, shall be governed by and made subject to these specifications." Section 900 of Form 408 is entitled "Traffic Accommodation and Control" and contains a provision which is dispositive of this case. Section 901.3(b) of Form 408 provides:

> *When indicated on the drawings or specified,* the contractor shall maintain traffic over sections of the old road and/or new roadway and portions adjacent thereto, and shall keep a sufficient width of these sections open and passable, as specified herein, with minimum traffic interference, consistent with the prosecution of the work. (Emphasis added.)

The Board found as fact that "[n]o description was provided in the special provisions or other Contract documents indicating the manner in which traffic was to be maintained and controlled within the two-mile area in which the new roadway was to be constructed over the existing L. R. 386." The Board found further that, although Paoli's bid included a $60,000 allowance for "Traffic Accommodation and Control," this $60,-000 bid was intended to cover the "protection of four to five existing intersecting roads over the relocated portion of the road," and did not include any allowance for maintenance of traffic along the two-mile segment of existing roadway. There is substantial evidence in the record to support these findings.

Since the law is clear that contractors performing work and incurring costs beyond the scope of the contract are entitled to compensation therefor, *Department of Highways v. S. J. Groves and Sons Co.,* 20 Pa. Commonwealth Ct. 526, 343 A.2d 72 (1975); *Penn-Jersey Contractors, Inc. v. General State Authority;*

12 Pa. Commonwealth Ct. 203, 315 A.2d 920 (1974), we affirm the order of the Board.

ORDER

Now, May 19, 1978, the order of the Board of Arbitration of Claims is hereby affirmed.