403 A.2d 1315

**Fred L. KELLAMS et al., Appellants,**

**v.**

**PUBLIC SCHOOL EMPLOYES' RETIREMENT BOARD.**

Supreme Court of Pennsylvania.

Argued May 21, 1979.

Decided July 16, 1979.

Reargument Denied Sept. 10, 1979.

Clarence C. Morrison, Harrisburg, for appellants.

Raymond Kleiman, Harrisburg, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO and LARSEN, JJ.

## OPINION

PER CURIAM:

The Court being equally divided, the order is affirmed.

ROBERTS, J., filed an Opinion in Support of Affirmance in which NIX, J., joins.

MANDERINO, J., concurs in Affirmance.

LARSEN, J., filed an Opinion in Support of Reversal in which EAGEN, C. J., and O'BRIEN, J., join.

## OPINION IN SUPPORT OF AFFIRMANCE

ROBERTS, Justice.

For the past several years the Commonwealth, as a result of its own error, has paid retired public school employees, annuitants of the Public School Employes' Retirement System, more retirement benefits than the Retirement Code of 1959 directs. Not a particle of evidence suggests the retirees improperly induced the overpayments. Indeed, the overpayments were made solely because the Commonwealth mistakenly interpreted the Code. And nothing would suggest the retirees sought to perpetuate the Commonwealth's error. To the contrary, it was the retirees who initiated proceedings for declaratory relief to clarify their own rights.

Despite the obvious, indeed, admitted unfairness of its declaration, the Opinion in Support of Reversal would sanction the Commonwealth's recovery of the past payments. Surely the retirees have not held these retirement payments on reserve. Indeed, the payments are expressly designed for current use. The Commonwealth Court, Wilkinson, Jr., J., fully explained:

"here the issue is not the correctness of the Commonwealth claim, it is whether it would be unconscionable to permit the Commonwealth to demand restitution in this unusual situation. Perhaps the things that make the plaintiffs' position so unique are that all the facts were well known to everyone, as far as the record shows the original incorrect ruling was made unilaterally by the Commonwealth after a request and full disclosure by the plaintiffs, and the Commonwealth persisted in its error over a number of years while the plaintiffs used the funds presumably for the purposes for which retirement pay-

ments are intended, i. e., to pay for living expenses after the income from gainful employment has ended."

38 Pa.Cmwlth. 101, 104, 391 A.2d 1139, 1141 (1978).

The Commonwealth Court recognized that the manifest hardship repayment would impose must be avoided. On this record, devoid of any indication that the retirees were in any way responsible for the Commonwealth's error in making overpayments, the Commonwealth Court's order refusing to direct repayment is eminently proper. I would affirm the order of the Commonwealth Court on the opinion of Judge Wilkinson.

NIX, J., joins in this opinion in support of affirmance.

## OPINION IN SUPPORT OF REVERSAL

LARSEN, Justice.

In 1976, a joint petition for declaratory judgment was filed in the Commonwealth Court by a class of annuitants of the Public School Employes' Retirement System of Pennsylvania (hereinafter "annuitants") and the Public School Employes' Retirement Board (hereinafter "the Board"). The class of annuitants is composed of former public school employes and contributors to the Public School Employes' Retirement System who retired between the years 1968 through 1973 and who had purchased credit for prior out-of-state employment before retiring. The petition stated that the Board had provided the annuitants with a statement of their monthly retirement allowance under the Public School Employes' Retirement Code of 1959 [1] before their retirement, and that the annuitants had received the stated retirement allowance after retirement but only until February of 1974. At that time, the Board notified the annuitants that their compensation for out-of-state employment had erroneously been included in the "final average salary" component of the benefit formula, and that this had resulted in a greater monthly retirement allowance than that to which

1. Act of June 1, 1959, P.L. 350, § 101 et seq., *as amended*, 24 P.S. § 3101 et seq.

they were legally entitled. The annuitants were told that their future allowances would be based on a proper computation of benefits. Additionally, the annuitants were asked to contact the Board and make arrangements for the repayment of those funds which had been mistakenly disbursed to them in the past.

The petition for declaratory judgment requested 1) a determination of whether or not the Board erred as a matter of law in recomputing annuitants' benefits, and 2) the granting of such relief as may be appropriate. After stipulations to the material facts and cross motions for summary judgment, the Commonwealth Court entered an order holding: 1) compensation for out-of-state employment is not a part of the "final average salary" component of the benefit formula; 2) the Board is not estopped from recomputing annuitants' benefits and correcting its error in the future; and 3) the Board is estopped from taking any action to recover the prior overpayments. Both parties now appeal from this decision; the annuitants challenging the first two portions of the court's order, and the Board challenging the final portion.

Section 102(23) of the Public School Employes' Retirement Code of 1959 (24 P.S. § 3102(23)) provides that " '[f]inal average salary' shall mean the highest average annual *compensation* of a contributor *as a school employe* during any five (5) nonoverlapping periods of twelve (12) consecutive months of contributory service. . . ." (emphasis supplied). Sections 102(6) and (7) of this Code (24 P.S. §§ 3102(6) and (7) ) limit the meaning of the phrase "school employe" to those persons employed by schools which are within the Commonwealth of Pennsylvania and under the supervision of its Department of Public Instruction and an elected or appointed board [2]. Thus, the definitional provi-

---

2. Section 102(6) provides:

"*Public school*" *shall mean* any class school, high school, training school, vocational school, truant school, parental school, schools for the instruction of the physically handicapped, and classes conducted for the education and training of adults, out-of-school youth, preschool age children and school age children fi-

sions of this Code make it clear that compensation for out-of-state employment does not enter into the computation of "final average salary."

Moreover, the doctrine of estoppel cannot be invoked to prevent the Board from recomputing annuitants' benefits or obtaining a refund of the prior overpayments. Although it may be generally said that under Pennsylvania law the doctrine of estoppel is applicable to government, there are still situations in which that doctrine cannot be invoked against the Commonwealth or its instrumentalities and subdivisions. *Commonwealth Department of Public Welfare v. UEC, Inc.*, 483 Pa. 503, 397 A.2d 779 (1979); *Ervin v. City of Pittsburgh*, 339 Pa. 241, 14 A.2d 297 (1940). Significant among those situations is the principal that the government cannot be bound by the acts of its agents and employees if those acts are outside the agent's powers, in violation of positive law, or acts which require legislative or executive action. *Ervin v. City of Pittsburgh, supra; Banks v. Redevelopment Authority of the City of Philadelphia*, 416 F.Supp. 72 (W.D.Pa.1976), aff'd. 556 F.2d 564 (1977), cert. denied 434 U.S. 929, 98 S.Ct. 414, 54 L.Ed.2d 288 (1977), rehearing denied 434 U.S. 1003, 98 S.Ct. 650, 54 L.Ed.2d 500. For, as stated in *Brown v. Richardson*, 395 F.Supp. 185, 190 (W.D. Pa.1975):

> nanced wholly or in part by the Federal government, and *any or all classes or schools within the Commonwealth, conducted under the order and superintendence of the Department of Public Instruction of the Commonwealth and of a duly elected or appointed board* of public education, board of school directors or board of trustees of the Commonwealth or of any school district, and shall include the officers of the Department of Public Instruction and the State Board of Education, community colleges, area vocational technical schools, and technical institutes established under the provisions of the "Community College Act of 1963." (emphasis supplied)

Section 102(7) provides in pertinent par⁺:

> (7) *"School employee" shall mean* any teacher, principal, supervisor, supervising principal, county superintendent, district superintendent, assistant superintendent, *any member of the staff of a public school* or any clerk, stenographer, janitor, attendance officer *or other person engaged in any work concerning or relating to a public school* or in connection therewith or under contract or engagement to perform one or more of these functions,  .  .  . (emphasis supplied).

"By operation of law, parties dealing with the government are charged with knowledge of, and are bound by, statutes and lawfully promulgated regulations, (citation omitted), and reliance upon incorrect information received from a government agent or employee can not alter the terms of a statute regardless of the economic hardship which may result."

See also, *Commonwealth v. Seagram Distillers Corporation,* 379 Pa. 411, 109 A.2d 184 (1954).

The instant case falls squarely within this limitation on the invocation of the doctrine of estoppel. The Public School Employes' Retirement Code of 1959 makes the Board trustees of the Public School Employes' Retirement Fund, but the Code gives the Board no power to alter or modify the individual retirement benefits mandated by the statute.[3] The Board must pay to an annuitant that amount which results from a proper application of the statutory formula; nothing more and nothing less. The Board's miscalculation of annuitants' benefits and disbursement of amounts in excess of those provided for under the Code were, therefore, contrary to the positive law and outside the authority delegated to the Board by the Commonwealth. Accordingly, the Board may not be estopped from recomputing annuitants' benefits or seeking recovery of those monies which were illegally disbursed from the retirement fund. *Ervin v. City of Pittsburgh, supra; Banks v. Redevelopment Authority of the City of Philadelphia, supra.*

I recognize, as did the court below, that this holding would no doubt impose a financial hardship on innocent parties who have in good faith relied upon the representations of those in positions of trust. While I regret this unfortunate result, I am nevertheless constrained by the fact that it is the duty of courts to observe the conditions imposed by the legislature on charges to the public treasury. *Cf. Federal*

---

**3.** Section 408 (24 P.S. § 3408) provides:

A member's annuity, a State annuity or a retirement allowance granted under the provisions of this act, shall be paid in equal monthly installments and shall not be increased, decreased, revoked or repealed, except as otherwise provided in this act.

*Crop Insurance Corp. v. Merrill*, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947). For, if such were not the case, agents of the Commonwealth would acquire a de facto power to override the legislative will and grant rights where none had previously existed in the law. I would, therefore, as suggested in the Brief for the Public School Employes' Retirement Board at pages 16 and 17, defer to the Board to "exercise its legal prerogatives with restraint to insure that justice is done in each case" and to "equitably adjust the problem".

Consequently, I would affirm those portions of the order of the court below excluding out-of-state compensation from the "final average salary" component of the benefit formula and permitting the Public School Employes' Retirement Board to correct this error prospectively. I would, however, reverse that portion of the order of the court below restraining the Public School Employes' Retirement Board from recouping prior disbursements which were in excess of the statutorily mandated benefits.

EAGEN, C. J., and O'BRIEN, J., join in this opinion in support of reversal.